UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA MCKEEN-CHAPLIN, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>   v.<br><br>PROVIDENT SAVINGS BANK, FSB,<br><br>        Defendant. | No. 2:12-CV-03035-GEB-AC<br><br>**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Pending are cross motions for summary judgment concerning Defendant Provident Savings Bank, FSB's ("Provident") affirmative defense, in which Provident asserts it was justified in not paying Plaintiffs overtime wages prescribed in the federal Fair Labor Standards Act ("FLSA"). Provident also moves for summary judgment on its affirmative defense in which it asserts it was justified in not paying Plaintiff McKeen-Chaplin overtime wages prescribed in the California Labor Code. Provident argues that Plaintiffs, who are current and former Provident mortgage underwriters, are, or were, "administratively exempt" from the overtime requirement in the FLSA, and that Plaintiff McKeen-Chaplin was "administratively exempt" from the overtime requirement in the California Labor Code.

Both federal and California law provide overtime protection for employees who work in excess of forty hours per

1

week. 29 U.S.C. § 207(a)(1); Cal. Labor Code § 510(a). However, neither the FLSA nor the California Labor Code overtime protections apply to "any employee employed in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1); 8 Cal. Code Regs. § 11040(1) (stating that California's overtime requirements do "not apply to persons employed in administrative . . . capacities."). Under both federal and California law, the employer bears the burden of proving that the administrative exemption applies to its employees. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124 (9th Cir. 2002) ("An 'employer who claims an exemption from the FLSA has the burden of showing that the exemption applies.'") (quoting Donovan v Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983)); Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 794-95 (1999) ("[T]he assertion of an exemption from [California's] overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption."). This exemption is "to be narrowly construed against [an] employer[]" asserting it. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)(referencing the FLSA); Eicher v. Advanced Bus. Integrators, Inc., 151 Cal. App. 4th 1363, 1370 (2007) ("[U]nder California law, exemptions from statutory mandatory overtime provisions are narrowly construed.").

## II.   UNCONTROVERTED FACTS[1]

The following facts concerning the motions are either

---

[1]  Provident requests judicial notice be taken of documents Plaintiffs filed in state court. The request is denied since Provident does not explain in the request for judicial notice what relevance these documents have to its summary judgment motion.

admitted or "deemed" uncontroverted since they have not been controverted with specific facts as required by Local Rule 260(b).[2]

Provident "is in the business of selling mortgage loans" and "employs . . . mortgage underwriters . . . whose primary duty is to underwrite home mortgage loan[] applications for one- to four-family residential units." (Def. SUF ¶ 1, ECF No. 76-1; Pl. SUF ¶ 1, ECF No. 77-1.)

To initiate a mortgage, Provident "loan officers[,] [who are not underwriters,] . . . discuss the loan products with [the] borrower." (Pl. SUF ¶ 51.) "A loan processor then runs a credit check, gathers further documentation, assembles the file for the underwriter, and runs the loan through an automated underwriting system [("AUS")]." (Pl. SUF ¶ 4.) The AUS "applies certain guidelines to a loan and returns a preliminary decision (approval, refer, or ineligible.)" (Pl. SUF ¶ 5.) "The loan . . . goes to the underwriter after this processing is finished." (Pl. SUF ¶ 4.)

An "underwriter has to make sure that the [loan] processor put the correct information into the AUS and . . . that the AUS is applying the correct rules to the facts of a

---

[2] LR 260(b) prescribes:
> Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any . . . document relied upon in support of that denial.

If the non-movant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

particular loan." (Pl. SUF ¶ 6.) He or she does this by applying "Provident's guidelines or lending criteria as well as agency guidelines that are specific to each loan product to determine whether the particular loan falls within the level of risk Provident is willing to accept." (Def. SUF ¶ 11.) A Provident underwriter's job involves <u>consideration of "the borrower's income, assets, debts and investments . . . . This comprises most of the Plaintiffs' job duties."</u> (Def. SUF ¶ 10)(emphasis added.)

In reviewing a loan application, underwriters may impose "conditions" on a loan application and refuse to approve the loan until the borrower satisfies those conditions. (Def. SUF ¶¶ 14, 16, 19.) Conditions include "items and/or documentation that an underwriter requires" before he or she will approve a loan. (Def. SUF ¶ 13.) While some "conditions" are required by the guidelines, underwriters can include additional conditions beyond those the guidelines require. (Def. SUF ¶ 16.) Further, "[i]n certain circumstances, [Provident underwriters] can request that Provident make an exception to the guidelines" and approve a loan that does not satisfy the guidelines. (Def. SUF ¶ 24.)

When a Provident underwriter approves a loan, the loan is "transferred to other [Provident] employees . . . to finalize loan funding." (Pl. SUF ¶ 55.) Provident sells approved mortgage loans to third-party investors. (Pl. SUF ¶ 12.)

### III. DISCUSSION

**A.  FLSA Claim**

"The FLSA delegates to the Secretary of Labor broad authority to 'define [ ] and delimit[ ]' the scope of the administrative exemption.  In accordance with that authority, the

4

Secretary has formulated a test, known as the 'short duties test,' to determine whether employees . . . qualify for the administrative exemption." In re Farmers Ins. Exch., 481 F.3d 1119, 1127 (9th Cir. 2006). Federal courts "must give deference to [Department of Labor's] regulations interpreting the FLSA." Webster v. Public Sch. Emp. of Wash, Inc., 247 F.3d 910, 914 (9th Cir. 2001). The "short duties test" states:

> The term "employee employed in a bona fide administrative capacity" . . . shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual <u>work directly related to</u> the management or <u>general business operations</u> of the employer or the employer's customers; and
>
> (3) Whose <u>primary duty</u> includes the <u>exercise of discretion and independent judgment</u> with respect to matters of significance.

29 C.F.R. § 541.200(a) (emphasis added).

It is undisputed that the salary requirement is satisfied. Provident seeks summary judgment on the second and third requirements and Plaintiffs cross move on the second requirement.

    **1.   Work Directly Related to Provident's General Operations**

Plaintiffs argue Provident cannot satisfy the second requirement of the administrative exemption, which involves determination of whether Plaintiffs' "primary duty is[,] [or was,] the performance of office or non-manual work directly

1 related to the management or general business operations of
2 [Provident] or [Provident's] customers." 29 C.F.R. §
3 541.200(a)(2).
4     It is uncontroverted that each Plaintiff's primary duty
5 is, or was, "to underwrite home mortgage loan applications for
6 one- to four-family residential units," and that this duty
7 constitutes "office work" as the phrase is used in 29 C.F.R. §
8 541.200(a)(2). (Pl. SUF ¶ 1; see also Def. SUF ¶ 10.) However,
9 Plaintiffs argue this duty does not, or did not, constitute work
10 directly related to Provident's general business operations.
11     29 C.F.R. § 541.201(a) defines the phrase "directly
12 related to management or general business operations" as it is
13 used in the administrative exemption in relevant part as follows:

> The phrase "directly related to . . . general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work <u>directly related to assisting with the running or servicing of the business</u>, as distinguished, for example, <u>from working on a manufacturing production line or selling a product in a retail or service establishment</u>.

19 (emphasis added).

> The distinction between "running or servicing of the business" and "working on a manufacturing production line or selling a product in a retail or service establishment," has given rise to what many courts refer to as the "administrative/production dichotomy." Under the dichotomy, "production employees (whose job it is to generate the product or service the business offers to the public) will not qualify for the exemption." Stated differently, if a court determines that an employee generates, or "produces" the product/service that the employer offers to the public, then that employee is a "production" employee who cannot qualify for the administrative exemption. If, on the

6

> other hand, the employee does not "produce" the employer's product or service, the court must undertake an additional analysis to determine whether the employee performs an "administrative" function within the meaning of 29 C.F.R. § 541.201.

Lutz v. Huntington Bankcshares, No. 2:12-cv-01091, 2014 WL 2890170, at *8 (S.D. Ohio June 25, 2014).

> [T]he administration/production dichotomy [is] . . . one piece of the larger inquiry, recognizing that a court must "constru[e] the statutes and applicable regulations as a whole." Indeed, some cases analyze the primary duty test without referencing the ... dichotomy at all. This approach is sometimes appropriate because . . . the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis. Only when work falls "squarely on the 'production' side of the line," has the administration/production dichotomy been determinative.

Bothell, 299 F.3d at 1127 (third alteration in original, quotations omitted).

Plaintiffs argue they are part of Provident's production line since they produce loans that Provident sells to third-party investors, and rely on the Second Circuit's opinion in Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009) as support for this argument. Provident counters its underwriters "do not 'sell' mortgage loans" and instead "service Provident's mortgage . . . business by assessing the risk associated with loan applications and deciding whether to approve them." (Def. Mot. 1:21-25.)

However, Plaintiffs' reliance on Davis is misplaced since "Davis relied on the pre-2004 [CFR] example of 'production,' which had no qualifications. The current example equates production with physical manufacturing, and its

7

1  usefulness is limited [in light of the nature of each Plaintiff's
2  duties]." <u>Bollinger v. Residential Capital, LLC</u>, 863 F. Supp. 2d
3  1041, 1047 (W.D. Wash. 2012). Plaintiffs' work is not similar to
4  "work on a manufacturing production line or selling a product in
5  the retail or service establishment," 29 C.F.R. § 541.201(a),
6  since Plaintiffs' do not "produc[e] anything in the literal
7  sense." <u>Bollinger</u> at 1047. "To place them [on the production side
8  because they 'produce' loans that are sold to third-party
9  investors] would elevate form . . . over substance." <u>In re</u>
10 <u>Farmers Ins. Exch.</u>, 481 F.3d at 1132. Therefore, the
11 administrative/production dichotomy does not resolve the question
12 of whether Provident satisfies the second prong of the
13 administrative exemption.

14       Provident argues Plaintiff's primary duty is, or was,
15 related to Provident's general business operations since their
16 role is analogous to work in quality control, as prescribed in 29
17 C.F.R. §541.201(b), which states in relevant part: "[w]ork
18 directly related to . . . general business operations includes...
19 quality control. . . and similar activities."  Plaintiffs counter
20 they do not perform quality control work since "Provident has at
21 least three quality control programs . . . . [that are] distinct
22 from Plaintiffs' underwriting work." (Pl. Opp'n 6:27-7:6.)

23       It is uncontroverted that "Provident uses an outside
24 company to perform quality control functions" and that Provident
25 has internal quality control employees that "completely re-
26 underwrite 10% of loans." (Pl. SUF ¶¶ 47, 49.) However, it is
27 also uncontroverted that Provident underwriters "must apply
28 Provident's guidelines or lending criteria as well as agency

8

guidelines . . . to determine whether the particular loan falls within the level of risk Provident is willing to accept," and this review comprises most of Plaintiffs' job duties. (Def. SUF ¶¶ 10-11.) The task of determining whether a particular loan falls within the level of risk Provident is willing to accept "makes [an underwriter's] duties analogous to a quality control employee who prevents a defective product from being sold," notwithstanding Provident's use of additional quality controls. Lutz, No. 2:12-cv-01091, 2014 WL 2890170, at *13.

Since the primary duty of a Provident underwriter includes "quality control . . . [or] other similar activities," prescribed in 29 C.F.R. §541.201(b), Plaintiffs have not shown that their work is not or was not directly related to Provident's general business operations. Therefore, Plaintiffs' summary judgment motion is denied.

### 2. Primary Duty Includes the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance

Provident argues it should prevail on its motion because each Plaintiff's "primary duty [includes, or] include[d,] the exercise of discretion and independent judgment with respect to matters of significance," 29 C.F.R. § 541.200(a)(3); specifically, Provident argues solely that underwriters can "'waiv[e] or deviat[e] from [the guidelines] without prior approval' by declining to approve a loan that meets lending criteria and/or request[] exceptions in order to approve a loan that does not [meet lending criteria]." (Def. Mot. 21:5-10.)

29 C.F.R. § 541.700 prescribes: "The term 'primary

duty' means the principal, main, major or most important duty that the employee performs. Determination of any employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."

It is uncontroverted that underwriters may place "conditions" on a loan application that satisfies Provident's guidelines, and may decline to approve a loan unless or until the borrower satisfies those conditions. (Def. SUF ¶¶ 16, 19.) It is also uncontroverted that Plaintiffs may "request that Provident make an exception to the guidelines" to "make a loan that does not . . . [satisfy the] guidelines." (Def. SUF ¶ 24.) However, Provident has not met its burden under the summary judgment standard of establishing that imposing conditions or requesting exceptions to the guidelines is, or was, part of Plaintiffs' <u>primary</u> duty. Therefore, Provident's motion is denied.

### B. State Law Claims

Provident's summary judgment motion on its defense to McKeen-Chaplin's state law claim is premised on the argument that it would be granted summary judgment on its FLSA affirmative defense. However, since its motion concerning the FLSA was denied, the state law portion of its motion is also denied.

### IV. CONCLUSION

For the stated reasons, Plaintiffs' summary judgment is DENIED and Provident's motion is DENIED.

Dated: April 17, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge