UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA MCKEEN-CHAPLIN, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENT SAVINGS BANK, FSB,<br><br>Defendant. | No. 2:12-CV-03035-GEB-AC<br><br>**ORDER DENYING PLAINTIFFS' SUMMARY JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION** |

On March 17, 2015 an order issued concerning summary judgment motions filed by Plaintiffs and Defendant Provident Savings Bank, FSB ("Provident"). (ECF No. 85.) The parties moved for reconsideration of that order and requested leave to file supplemental briefing, arguing under Federal Rule of Civil Procedure 1 that supplemental briefing would conserve resources in light of their recent stipulation to a bench trial. (ECF No. 94.) The request for supplemental briefing was granted, (ECF No. 95), and after consideration of that briefing, the March 17 order is vacated and superseded by the instant order.

Each party seeks summary judgment on Provident's affirmative defense, in which Provident asserts it was justified

1

in not paying Plaintiffs overtime wages prescribed in the federal Fair Labor Standards Act ("FLSA"). Provident also moves for summary judgment on its affirmative defense in which it asserts it was justified in not paying Plaintiff McKeen-Chaplin overtime wages prescribed in the California Labor Code. Provident argues that the FLSA Plaintiffs, who are former Provident mortgage underwriters, were "administratively exempt" from the overtime requirement in the FLSA, and that Plaintiff McKeen-Chaplin was "administratively exempt" from the overtime requirement in the California Labor Code.

Both federal and California law provide overtime provisions for employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1); Cal. Labor Code § 510(a). However, neither the FLSA nor the California Labor Code overtime provisions apply to "any employee employed in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1); 8 Cal. Code Regs. § 11040(1) (stating that California's overtime requirements do "not apply to persons employed in administrative . . . capacities."). Under both federal and California law, the employer bears the burden of proving that the administrative exemption applies to its employees. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124 (9th Cir. 2002) ("An 'employer who claims an exemption from the FLSA has the burden of showing that the exemption applies.'") (quoting Donovan v Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983)); Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 794-95 (1999) ("[T]he assertion of an exemption from [California's] overtime laws is considered to be an affirmative defense, and therefore the employer bears the

2

burden of proving the employee's exemption."). This exemption is "to be narrowly construed against [an] employer[]" asserting it. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)(referencing the FLSA); Eicher v. Advanced Bus. Integrators, Inc., 151 Cal. App. 4th 1363, 1370 (2007) ("[U]nder California law, exemptions from statutory mandatory overtime provisions are narrowly construed.").

## II.  UNCONTROVERTED FACTS[1]

The following facts concern the motions and are either admitted or are "deemed" uncontroverted since they have not been controverted with specific facts as required by Local Rule 260(b).[2]

Provident "is in the business of selling mortgage loans" and "employs . . . mortgage underwriters . . . whose primary duty is to underwrite home mortgage loan[] applications for one- to four-family residential units." (Def. SUF ¶ 1, ECF No. 76-1; Pl. SUF ¶ 1, ECF No. 77-1.)

To initiate a mortgage, Provident "loan officers[,] [who are not underwriters,] . . . discuss the loan products with [the] borrower." (Pl. SUF ¶ 51.) "A loan processor then runs a

---

[1] Provident requests judicial notice be taken of documents Plaintiffs filed in state court. The request is denied since Provident does not explain in the request the relevance these documents have to its motion.

[2] LR 260(b) prescribes:
> Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any . . . document relied upon in support of that denial.

If the non-movant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

3

credit check, gathers further documentation, assembles the file for the underwriter, and runs the loan through an automated underwriting system [("AUS")]." (Pl. SUF ¶ 4.) The AUS "applies certain guidelines to a loan and returns a preliminary decision (approval, refer, or ineligible.)" (Pl. SUF ¶ 5.) "The loan . . . goes to the underwriter after this processing is finished." (Pl. SUF ¶ 4.)

An "underwriter has to make sure that the [loan] processor put the correct information into the AUS and . . . that the AUS is applying the correct rules to the facts of a particular loan." (Pl. SUF ¶ 6.) The underwriter does this by applying "Provident's guidelines or lending criteria as well as agency guidelines that are specific to each loan product to determine whether the particular loan falls within the level of risk Provident is willing to accept." (Def. SUF ¶ 11.) A Provident underwriter's job includes <u>consideration of "the borrower's income, assets, debts and investments . . . . This comprises most of the Plaintiffs' job duties."</u> (Def. SUF ¶ 10)(emphasis added.)

In reviewing a loan application, underwriters may impose "conditions" on a loan application and refuse to approve the loan until the borrower satisfies those conditions. (Def. SUF ¶¶ 14, 16, 19.) The referenced conditions include "items and/or documentation that an underwriter requires" the loan will be approved. (Def. SUF ¶ 13.) While some "conditions" are required by the guidelines, underwriters can include additional conditions beyond those the guidelines require. (Def. SUF ¶ 16.) Further, "[i]n certain circumstances, [Provident underwriters] can request

that Provident make an exception to the guidelines" and approve a loan that does not satisfy the guidelines. (Def. SUF ¶ 24.)

When a Provident underwriter approves a loan, the loan is "transferred to other [Provident] employees . . . to finalize loan funding." (Pl. SUF ¶ 55.) Provident sells approved mortgage loans to third-party investors. (Pl. SUF ¶ 12.)

### III. DISCUSSION

**A. FLSA Claim**

"The FLSA delegates to the Secretary of Labor broad authority to 'define [ ] and delimit[ ]' the scope of the administrative exemption. In accordance with that authority, the Secretary has formulated a test, known as the 'short duties test,' to determine whether employees . . . qualify for the administrative exemption." In re Farmers Ins. Exch., 481 F.3d 1119, 1127 (9th Cir. 2006). Federal courts "must give deference to [Department of Labor's] regulations interpreting the FLSA." Webster v. Public Sch. Emp. of Wash, Inc., 247 F.3d 910, 914 (9th Cir. 2001). The "short duties test" states:

> The term "employee employed in a bona fide administrative capacity" . . . shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

5

29 C.F.R. § 541.200(a) (emphasis added).

It is undisputed that the salary requirement is satisfied. Provident seeks summary judgment on the second and third requirements and Plaintiffs cross move on the second requirement.

**1. Work Directly Related to Provident's General Operations**

Plaintiffs argue Provident cannot satisfy the second requirement of the administrative exemption, which involves determination of whether Plaintiffs' "primary duty is[,] [or was,] the performance of office or non-manual work directly related to the management or general business operations of [Provident] or [Provident's] customers." 29 C.F.R. § 541.200(a)(2).

The uncontroverted facts establish that each Plaintiff's primary duty was "to underwrite home mortgage loan applications for one- to four-family residential units," and that this duty constitutes "office work" referenced in 29 C.F.R. § 541.200(a)(2). (Pl. SUF ¶ 1; see also Def. SUF ¶ 10.) However, Plaintiffs argue this mortgage loan underwriting duty did not constitute work directly related to Provident's general business operations.

29 C.F.R. § 541.201(a) defines the phrase "directly related to management or general business operations" as it is used in the administrative exemption in pertinent part as follows:

> The phrase "directly related to . . . general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work

6

>       directly related to assisting with the
>       running or servicing of the business, as
>       distinguished, for example, from working on a
>       manufacturing production line or selling a
>       product in a retail or service establishment.

(emphasis added).

>       The distinction between "running or servicing
>       of the business" and "working on a
>       manufacturing production line or selling a
>       product in a retail or service
>       establishment," has given rise to what many
>       courts refer to as the
>       "administrative/production dichotomy." Under
>       the dichotomy, "production employees (whose
>       job it is to generate the product or service
>       the business offers to the public) will not
>       qualify for the exemption." Stated
>       differently, if a court determines that an
>       employee generates, or "produces" the
>       product/service that the employer offers to
>       the public, then that employee is a
>       "production" employee who cannot qualify for
>       the administrative exemption. If, on the
>       other hand, the employee does not "produce"
>       the employer's product or service, the court
>       must undertake an additional analysis to
>       determine whether the employee performs an
>       "administrative" function within the meaning
>       of 29 C.F.R. § 541.201.

Lutz v. Huntington Bankcshares, No. 2:12-cv-01091, 2014 WL 2890170, at *8 (S.D. Ohio June 25, 2014).

>       [T]he administration/production dichotomy
>       [is] . . . one piece of the larger inquiry,
>       recognizing that a court must "constru[e] the
>       statutes and applicable regulations as a
>       whole." Indeed, some cases analyze the
>       primary duty test without referencing the ...
>       dichotomy at all. This approach is sometimes
>       appropriate because . . . the dichotomy is
>       but one analytical tool, to be used only to
>       the extent it clarifies the analysis. Only
>       when work falls "squarely on the 'production'
>       side of the line," has the
>       administration/production dichotomy been
>       determinative.

Bothell, 299 F.3d at 1127 (third alteration in original, quotations omitted).

       Plaintiffs argue they were part of Provident's

7

1  production line since they produced loans that Provident sold to
2  third-party investors, and rely on the Second Circuit's opinion
3  in Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009)
4  as support for this argument. Provident counters Plaintiffs
5  "d[id] not 'sell' mortgage loans;" "[r]ather the underwriters
6  service[d] Provident's mortgage selling business by assessing the
7  risk associated with loan applications and deciding whether to
8  approve them." (Def. Mot. 1:21-25.)

9  Davis concluded that on the facts before it, an
10 underwriter's job fell "under the category of production rather
11 than of administrative work," concluding:

12
> [the] Underwriters . . . performed work that was primarily functional rather than conceptual. They were not at the heart of the company's business operations. They had no involvement in determining the future strategy or direction of the business, nor did they perform any other function that in any way related to the business's overall efficiency or mode of operation. [They] played no role in the establishment of [their employer's] credit policy. Rather, they were trained only to apply the credit policy as they found it, as it was articulated to them through the detailed Credit Guide.

20 Id. at 536.

21  Plaintiffs work as Provident underwriters was not
22 similar to "work on a manufacturing production line or selling a
23 product in the retail or service establishment," 29 C.F.R. §
24 541.201(a), since Plaintiffs' did not "produc[e] anything in the
25 literal sense." Bollinger v. Residential Capital, LLC, 863 F.
26 Supp. 2d 1041, 1047 (W.D. Wash. 2012). "To place them [on the
27 production side because they 'produce[d]' loans that [were] sold
28 to third-party investors] would elevate form . . . over

8

substance." In re Farmers Ins. Exch., 481 F.3d at 1132. Therefore, the administrative/production dichotomy does not resolve the question of whether Provident satisfies the second prong of the administrative exemption.

Provident argues Plaintiffs' primary duty was related to Provident's general business operations since Plaintiffs role was analogous to work in quality control prescribed in 29 C.F.R. §541.201(b), which states in relevant part: "[w]ork directly related to . . . general business operations includes . . . control . . . and similar activities."

Plaintiffs counter they did not perform quality control work since "Provident has at least three quality control programs . . . . [that are] distinct from Plaintiffs' underwriting work." (Pl. Opp'n 6:27-7:6.) Plaintiffs contend their work should not be characterized as quality control because while "all [Provident] employees are responsible for 'quality,'" it is the "Corporate Loan Committee" that performs "a quality control function by reviewing errors identified in quality control audits and addressing performance issues causing those errors[;]" and "an underwriter who denies a loan for not meeting guidelines is not transformed into a quality control worker any more than a carpenter who refuses to use an unsafe saw becomes a safety inspector."  (Pl. Supp'l Mem. Cross Mot. Summ. J., 4:2-3; 4:20-22; 4:27-28, ECF No. 96.)

The uncontroverted facts establish that "Provident uses an outside company to perform quality control functions" and that Provident has an internal Corporate Loan Committee that "completely re-underwrite 10% of loans." (Pl. SUF ¶¶ 47, 49.) The

uncontroverted facts also establish that Provident underwriters "must apply Provident's guidelines or lending criteria as well as agency guidelines . . . to determine whether [a] particular loan falls within the level of risk Provident is willing to accept," and this review comprises most of Plaintiffs' job duties. (Def. SUF ¶¶ 10-11.) This evidence evinces that the work tasks in which an underwriter engages for the purpose of determining whether a particular loan falls within the level of risk Provident is willing to accept "makes [the underwriter's] duties analogous to a quality control employee who prevents a defective product from being sold" notwithstanding Provident's use of other quality controls. Lutz, No. 2:12-cv-01091, 2014 WL 2890170, at *13. Since Provident has shown Plaintiffs' primary duty included "quality control . . . [or] other similar activities," Plaintiffs' work was directly related to Provident's general business operations. 29 C.F.R. §541.201(b)

Therefore, Provident's motion on this requirement is granted and Plaintiffs' motion denied.

### 2. Primary Duty Includes the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance

Provident argues it should prevail on its motion concerning the third administrative requirement because each Plaintiff's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance," that is prescribed in 29 C.F.R. § 541.200(a)(3); specifically, Provident argues the mortgage loan underwriters could "'waiv[e] or deviat[e] from [the guidelines] without prior

1  approval' by declining to approve a loan that met lending
2  criteria and/or request[] exceptions in order to approve a loan
3  that d[id] not [meet the lending criteria]." (Def. Mot. 21:5-10.)
4      Plaintiffs counter that there is a question of fact
5  regarding how often Plaintiffs performed these duties. Plaintiffs
6  cite in support of their position deposition testimony evincing
7  that underwriters rarely requested exceptions. Plaintiff Clayton
8  testified she requested exemptions "maybe once a month," Ludwig
9  Decl. Ex. 7 ("Clayton Dep. Tr.") 109:11-15, ECF 73-5), and
10 Provident's Vice President of Mortgage Operations testified that
11 she "wouldn't say [exceptions] happen[] often." (Ludwig Decl. Ex.
12 10 ("Baker April 2013 Dep. Tr." 73:14-16, ECF No. 73-6.)
13     Provident responds:

> [Plaintiffs' position] d[oes] not take into account that Plaintiffs' discretion and independent judgment was manifested not only when they chose to act, but also in each circumstance where they chose not to act.... Plaintiffs exercise[d] discretion and independent judgment every time they underwr[o]te a loan file and decide[d] not only to request an exception to the guidelines, but also when they decide[d] not to request an exception.

20 (Def. Supp'l Br. ISO Mot. Summ. J., 4:8-13, ECF No. 97.)
21     Plaintiffs reply that deciding not to request an
22 exception to the guidelines cannot be considered part of a
23 Provident underwriter's primary duty since "there [was] no
24 'decision' about requesting an exception from the guidelines when
25 the loan satisfie[d] the guidelines." (Pls.' Supp'l Reply 3:19-
26 23, ECF No. 98.)
27     29 C.F.R. § 541.202 states in pertinent part, "the
28 exercise of discretion and independent judgment involves the

11

comparison and the evaluation of possible courses of conduct.... [T]he term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.700 prescribes:

> The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of any employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

The uncontroverted facts establish that underwriters could place "conditions" on a loan application that satisfied Provident's guidelines, and could decline to approve a loan unless or until the borrower satisfied those conditions. (Def. SUF ¶¶ 16, 19.) It is also uncontroverted that Plaintiffs could "request that Provident make an exception to the guidelines" so that an underwriter could "make a loan that d[id] not . . . [satisfy the] guidelines." (Def. SUF ¶ 24.) Performance of these duties required the exercise of discretion and independent judgment since they "involved the comparison and the evaluation of possible courses of conduct," and concerned matters of significance since they could influence whether Provident would approve a loan. 29 C.F.R. § 541.202. Further, Provident has shown Plaintiffs' duty to make decisions about when—and when not—to decline to approve a loan that met the lending criteria, and when to request an exception to the lending criteria, were part of Plaintiffs' primary duty in performance of their underwriting function, since the responsibilities were "the ... most important duty . . . [Provident underwriters] perform." 29 C.F.R. § 541.700; see (Def. SUF ¶¶ 10-11 (setting out an underwriter's

12

role in Provident's loan business as consideration of a borrower's income, assets, debts, and investments in order to determine if the loan falls within the level of risk Provident is willing to accept); see also Webster's II New College Dictionary (1995) (defining duty as "an act or a course of action required of one by position, custom, law, or religion"); Mtoched v. Lynch, 786 F.3d 1210, 1217 (9th Cir. 2015) (applying Webster's dictionary to define a statutory term)). Therefore, Provident's motion is granted.

### B. State Law Claims

Provident argues McKeen-Chaplin was administratively exempt from California's overtime laws and seeks summary judgment on this affirmative defense to her state law overtime claims.

The California Labor Code, which imposes overtime compensation requirements on employers, authorizes California's Industrial Welfare Commission to establish exemptions from the requirements for administrative employees. The phrases "primarily engaged in duties that meet the test of the exemption" and "discretion and independent judgment" are "construed in [the state administrative exemption] in the same manner as such terms are construed in" the FLSA's administrative exemption. 8 Cal. ADC § 11040(1)(A)(2). (emphasis added). The Industrial Welfare Commission's exemption defines an administrative employee as one:

> (a) Whose duties and responsibilities involve . . . The performance of non-manual work directly related to management policies or general business operations of his/her employer or his employee's customers . . . and
>
> (b) Who customarily and regularly exercises discretion and independent judgment; . . . .

13

>    and
>
>    (d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; . . . . and
>
>    (f) Who is primarily engaged in duties that meet the test of the exemption. . . .
>
>    (g) Such employees must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment.

Cal. Code. Regs. § 11040 ("Wage Order 4"). Satisfaction of the wage requirement concerning this exemption is undisputed.

Provident argues McKeen-Chaplin is administratively exempt since her work as an underwriter satisfies the FLSA's administrative exemption and she "primary engaged in duties that met the [California law exemption]" because she testified at her deposition that she spent most of her time reviewing loan applications. (Ludwig Decl. Ex. 1 ("McKeen-Chaplin Dep. Tr.") 113:19-115:15, ECF No. 73-4.)

McKeen-Chaplin argues summary judgment is inappropriate since there is a genuine issue of material fact regarding whether she was administratively exempt under the FLSA. This conclusory assertion is McKeen-Chaplin's only argument in opposition to Provident's motion on her state claims.

Provident made a factual showing under the applicable state law standard that McKeen-Chaplin was administratively exempt and McKeen-Chaplin has not presented facts from which a reasonable inference can be drawn that she is not administratively exempt. Therefore, Provident's motion on this issue is granted.

**IV.   CONCLUSION**

For the stated reasons, each Plaintiff's summary judgment is DENIED and Provident's motion is GRANTED. Judgment shall be entered in favor of Defendant.

Dated: August 12, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge