Matthew C. Helland, SBN 250451
Helland@nka.com
Daniel S. Brome, SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238
Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA MCKEEN-CHAPLIN, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>               Plaintiffs,<br><br>  v.<br><br>PROVIDENT SAVINGS BANK, FSB,<br><br>               Defendants. | **Case No. 2:12-cv-03035-MCE-AC**<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SETTLEMENT APPROVAL**<br><br><br>**Date:**       **March 22, 2018**<br>**Time:**        **2:00 pm**<br>**Courtroom:**  **7** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Gina McKeen-Chaplin, Anna Neal, James Perry, Kristi Suarez, Monica Alvarez, Carmen Phan, Randall Stewart, Susan Clayton, and Karen Honour seek approval of the settlement of their Fair Labor Standards Act (FLSA) claims as part of a $1,775,000 settlement that resolves this case and a related state law class action. This settlement provides excellent and substantial value for individuals who have endured extensive litigation and, absent settlement, would face a continued drawn-out path to recovery. This Court should grant approval to the FLSA portion of the settlement so that the settlement can move forward in both cases. After the notice and approval process is complete in the state court class action, the Parties will report back to this Court and request dismissal of the case.

## II.    RELEVANT PROCEDURAL HISTORY

### A.  *McKeen-Chaplin v. Provident*

Plaintiff Gina McKeen-Chaplin filed a putative class and collective action against Provident Savings Bank in this Court on December 17, 2012, asserting that Provident misclassified its mortgage underwriters as exempt from overtime and therefore failed to pay legally-required overtime pay. The action was initially certified as a collective action under federal law and a class action under state law, but the state law class was later decertified. The FLSA collective at one point contained twenty opt-in plaintiffs, although several later withdrew. This case currently has nine FLSA opt-in Plaintiffs.

In April 2015, this Court denied the parties' cross-motions for summary judgment. ECF No. 85. After the parties moved for reconsideration, the Court granted Provident's motion for summary judgment and denied Plaintiffs' cross-motion, finding that Plaintiffs fit within the administrative exemption to the FLSA. ECF No. 101. Plaintiffs appealed and the Ninth Circuit reversed, finding that Plaintiffs do not fit within the administrative exemption and were therefore entitled to overtime pay. *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847 (9th Cir. 2017). Provident petitioned for a writ of certiorari to the United States Supreme Court, which Plaintiffs opposed. The United States Supreme Court denied review. 138 S. Ct. 471 (2017). This

1  case was set for trial after being reassigned following appeal. ECF Nos. 117, 122.

2          **B. *Neal v. Provident***

3          On May 22, 2014, Anna Neal and other *McKeen-Chaplin* Plaintiffs filed a state law class

4  action in Alameda County Superior Court[1] to assert their individual state law claims and to

5  reassert state class claims. In *Neal*, the court denied Provident's motion to strike the class

6  allegations on collateral estoppel grounds. The Court then denied Plaintiffs' motion for class

7  certification, and Plaintiffs appealed that denial of class certification.[2] The appeal in *Neal* has

8  been fully briefed, but has not yet been set for oral argument.

9          **C. Mediation**

10         The parties first attempted mediation in May 2014 but were unable to finalize an

11 agreement at the time. After the United States Supreme Court denied review in *McKeen-Chaplin*,

12 the parties again returned to mediation with Steve Pearl, Esq. on December 18, 2017. The parties

13 reached an agreement to resolve both the *McKeen-Chaplin* and *Neal* actions via one settlement,

14 subject to court approval. The settlement agreement is attached to the Helland Declaration as

15 Exhibit 1.

16 **III.    THE SETTLEMENT**

17         After mediation on December 18, 2017 the parties agreed to settle both the *McKeen-*

18 *Chaplin* and *Neal* actions for $1,775,000.  The parties formalized that agreement in a long form

19 settlement agreement, which was executed between February 7 and February 21 2018. The

20 settlement amount includes all amounts to be paid by Defendant to the accepting plaintiffs,

21 attorneys' fees, and litigation costs. Provident is separately responsible for payment of employer-

22 side taxes on the portion of the settlement amounts treated as wages.

23         The First Appellate District Court of Appeal has jurisdiction over *Neal* and thus has

24 jurisdiction over settlement approval of *Neal*'s state law claims. The Parties have filed a letter in

25 the Court of Appeal asking the court to appoint a Judge of the Superior Court as referee to

26 approve the *Neal* portion of this settlement. Accordingly, the Parties only ask that this Court

27

28 [1] *Neal, et al.  v. Provident Savings Bank, FSB*, Case No. RG14726420.
   [2] Case Number A146324 at the First District Court of Appeal.

1  approve the settlement as it pertains to the FLSA claims of the nine opt-in Plaintiffs remaining in

2  this case. As outlined in the settlement agreement at Section 5, settlement notice in *Neal* will not

3  issue unless and until this Court approves the FLSA portion of the settlement. However, because

4  the settlement is contingent on approval in both courts, the Parties ask that this Court refrain

5  from immediately dismissing this case after approval. The Parties anticipate returning the Court

6  after final approval in *Neal* with a status report and a request for dismissal of this case at that

7  time.

8      The settlement allocates $612,000 of the $1,775,000 settlement amount for the FLSA

9  claims in this case. Additionally, each opt-in Plaintiff is separately allocated a portion of the

10  $500,333.33 allocated for *Neal* class members. The settlement agreement also contains a $15,000

11  contingency fund, which will be reallocated to Plaintiffs and class members if it is not used.

12  Plaintiffs' counsel are requesting up to $56,000 for reimbursement of costs[3] and thirty-three and

13  one-third percent ($591,666.67) in attorneys' fees, as provided for in the legal services

14  agreements with each opt-in plaintiff. The attorneys' fees and costs figures reflect the attorneys'

15  work in both actions.

16      The settlement is carefully structured because of the dual actions. The *Neal* settlement

17  includes certification of a state law class for settlement purposes, and therefore requires court

18  stewardship on behalf of the absent class members. The *McKeen-Chaplin* action, on the other

19  hand, involves only plaintiffs who affirmatively opted into the action and executed the settlement

20  agreement.

21      Several terms are explained in more detail:

22  1.    Settlement Amount.  Defendant will pay a total settlement amount of $1,775,000

23          to settle both the *McKeen-Chaplin* and *Neal* actions. This includes settlement

24          payments to all *McKeen-Chaplin* collective members and *Neal* class members,

25          attorneys' fees, and litigation costs. Defendant will be separately responsible for

---

[3] Since Plaintiffs' Counsel is administering settlement notice in house, its final costs will not be known until after distribution of notice. Plaintiffs will include their precise cost request in their fees and costs motion submitted in *Neal*.

-3-

1   the employer-side payroll taxes associated with the settlement payments. No

2   portion of the $1,775,000 will revert to Provident.

3   2.   Scope of the Settlement.  The settlement involves two separate groups. The nine

4   *McKeen-Chaplin* opt-in plaintiffs have affirmatively opted into this action, have

5   signed legal services agreements, and have executed the settlement agreement.

6   (Helland Decl. ¶ 3; Settlement Agreement.) The *Neal* settlement class includes

7   "All individuals who have been employed by Provident as mortgage Underwriters

8   in the State of California from July 9, 2009 through May 31, 2014 who do not

9   timely opt out of the Settlement within the time specified in the notice of

10   settlement." *McKeen-Chaplin* Plaintiffs are also members of the *Neal* state law

11   settlement class and will receive an allocation for both their *Neal* and *McKeen-*

12   *Chaplin* claims. (*See* Settlement Agreement Exh. A.)

13   3.   Allocation and Settlement Offers. Of the total $1,775,000 settlement, $612,000 is

14   allocated for settlement of the *McKeen-Chaplin* opt-in plaintiffs' FLSA claims.

15   The settlement agreement also allocates $500,333.33 for settlement of the *Neal*

16   claims, and contains a $15,000 contingency fund. If no issues with settlement

17   allocation necessitate use of the contingency fund, the contingency fund will be

18   allocated pro rata amongst all accepting plaintiffs. The minimum allocation for a

19   class member is $1,000. For the *McKeen-Chaplin* opt-ins' FLSA claims, the

20   recovery amount ranges from $13,122.99 to $178,915.31, depending on each

21   individual's dates of employment, compensation, and hours worked as disclosed

22   during discovery. (*See* Settlement Agreement Exh. A.)

23   4.   Settlement Administration. In order to save costs, Plaintiffs' Counsel is

24   administering the settlement in house.[4]  Provident will be responsible for issuing

25   checks and submitting IRS reporting forms. The individual payments will be

26   allocated 50% to alleged wages reported on an IRS Form W-2, and 50% to

27

28

---

[4] Plaintiffs' Counsel has the experience and resources to do so. *See* Helland Decl. ¶ 8.

1    alleged interest and non-wage damages reported on an IRS Form 1099.  (*See*
2    Settlement Agreement § 8.)

3    5.    Non-Reversionary Settlement.  The entire settlement amount is non-reversionary.
4    If any *Neal* class members opt out of the settlement, amounts allocated to those
5    individuals will not revert to Defendant, but will be reallocated to participating
6    plaintiffs.  (Agreement § 6)  If checks remain uncashed after 90 days, those
7    amounts will be donated to the following *cy pres* recipients: (a) Twenty-five
8    percent to the State Treasury for deposit in the Trial Court Improvement and
9    Modernization Fund; (b) Twenty-five percent to the State Treasury for deposit
10   into the Equal Access Fund of the Judicial Branch; (c) Twenty-five percent to
11   Legal Aid at Work; and (d) Twenty-five percent to Riverside Legal Aid. (*See*
12   Settlement Agreement § 9; *see also* California Code Civ. Pro. § 384 (regarding *cy*
13   *pres* recipients).)

14   6.    Release.  The release is tailored to the claims at issue in the case. *McKeen-*
15   *Chaplin* FLSA Opt-ins will give up their FLSA claims related to work as
16   mortgage underwriters for Provident prior to June 1, 2014. *Neal* class members
17   will give up their state law claims arising prior to June 1, 2014 from the facts
18   alleged in the lawsuit for overtime wages, failure to provide meal and/or rest
19   periods, failure to pay wages, for inaccurate wage statements, for unfair
20   competition, and for statutory and/or civil penalties, liquidated damages, penalties
21   and interest under California wage and hour laws. (*See* Settlement Agreement §
22   12.) June 1, 2014 is the date Provident reclassified its mortgage underwriters from
23   exempt to non-exempt.

24   7.    Attorneys' Fees and Costs. Plaintiffs' counsel are requesting up to $56,000 for
25   reimbursement of costs and thirty-three and one-third percent ($591,666.67) in
26   attorneys' fees, as provided for in the legal services agreements with each opt-in
27   plaintiff. The attorneys' fees and costs figures reflect the attorneys' work in both
28   actions.

-5-

This settlement represents an excellent result for *McKeen-Chaplin* Plaintiffs[5], both in terms of the monetary value, and the non-monetary terms.  The Nine Plaintiffs in this case will receive $612,000 in settlement payments, *free and clear* of attorneys' fees and costs.  This represents over 78% of the $783,123.48 of the total possible damages Plaintiffs disclosed during discovery in *McKeen-Chaplin*. (Helland Decl. ¶ 4.)  Of course, Plaintiffs' damages disclosures assume victory on Provident's remaining merits defenses, no reduction of Plaintiffs' claimed work hours based on testimony at trial, an award of full liquidated damages,[6] a finding of willfulness leading to a three year statute of limitations,[7] and use of the time-and-a-half method of calculating damages.[8]  The $612,000 was allocated pro-rata among the nine FLSA opt-ins after adjustments to outlier estimates regarding work hours. (Helland Decl. ¶ 5.)  As explained below, the settlement amount is exceptional in light of the damages calculated for plaintiffs and the litigation risks. *See Ma v. Covidien Holding*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

## IV.   ARGUMENT

Because the *McKeen-Chaplin* portion of the settlement does not involve a Rule 23 class, the traditional Rule 23 settlement review process does not apply. *Campanelli v. Hershey Co.*, 2011 WL 3583597, *1 (N.D. Cal. May 4, 2011).  However, because FLSA rights generally cannot be waived, settlement of private actions for back wages pursuant to 29 U.S.C. § 216(b) must be approved by the district court. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982.)  The decision of whether to approve a collective action settlement lies within the trial court's discretion. *See id.* at 1350.  In order to approve a settlement proposed by an employer and employees, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the FLSA claims. *Id.* at 1355; *Campanelli*, 2011 WL

---

[5] The Settlement Agreement also provides an excellent result for *Neal* class members, but this Court is not charged with reviewing that settlement agreement for fairness.
[6] 29 U.S.C. § 216(b).
[7] 29 U.S.C. § 255(a).
[8] *See, e.g.*, *Boyce v. Indep. Brewers United Corp.*, 223 F. Supp. 3d 942 (N.D. Cal. 2016).

3583597, at *1; *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Lee v. The Timberland Co.*, 2008 WL 2492295, * 2 (N.D. Cal. June 19, 2008); *Yue Zhou v. Wang's Rest.*, 2007 WL 172308, *2 (N.D. Cal. Jan. 17, 2007).  If a settlement in an employee FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."  *Lynn's Food Stores*, 679 F.2d at 1354; *Yue Zhou*, 2007 WL 172308, *2.  Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching."  *Lynn's Food Stores*, 679 F.2d at 1354.  Settlements of court actions are permissible because "initiation of the action by the employees provides some assurance of an adversarial context."  *Id.*

### A.    The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute

Although Plaintiffs prevailed at the Ninth Circuit on Provident's administrative exemption defense, this case nevertheless still involved *bona fide* disputes as to damages due under the FLSA.

For example, Provident argued that Plaintiffs must show that it "knew or should have known" they worked overtime in order to recover damages. Provident argued that Plaintiffs would not be able to do so at trial. And if Plaintiffs did overcome this hurdle, Provident intended to argue that Plaintiffs' estimated work hours were grossly inflated. While Plaintiffs were prepared to provide strong evidence and testimony on these points, there was certainly a risk that damages could be reduced or eliminated at trial based on these arguments.

Additionally, Plaintiffs' damage calculation assumes a three year statute of limitations, which requires a showing of willfulness. *See* 29 U.S.C. § 255(a). There was a bona fide dispute as to whether Plaintiffs could meet that burden. The same is true regarding Plaintiffs' entitlement to liquidated (double) damages. *See* 29 U.S.C. § 216(b). While Plaintiffs take the position that liquidated damages are the norm in FLSA cases, not the exception, there is certainly the risk that Court could have reduced or eliminated liquidated damages. And lastly, Plaintiffs calculated damages based on the time-and-a-half method. *See*, *e.g.*, *Boyce v. Indep. Brewers United Corp.*,

223 F. Supp. 3d 942 (N.D. Cal. 2016). This issue has been hotly contested over the years, and while the trend in the Ninth Circuit favors Plaintiffs, there is certainly a risk that the Court could award damages based under the half-time calculation method. Given all of the unresolved issues regarding Plaintiffs' entitlement to damages, this case involved bona fide FLSA disputes—even after the Ninth Circuit decision in Plaintiffs' favor.

Given these unresolved disputed issues, the result here is excellent. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982).   As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.* Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

The payments to the *McKeen-Chaplin* opt-ins for their FLSA claims—after attorneys' fees and costs—are a 78% of their best day in court. And if Plaintiffs lost only one of the remaining disputed issues, their relief could exceed their maximum possible recovery. If, for example, Plaintiffs did not recover liquidated damages, their best possible recovery would be $391,561.74. (Helland Decl. ¶ 4.) The $612,000 allocation for FLSA claims greatly exceeds that possible result. The relief provided in this settlement is more than enough to warrant approval. *See*, *e.g.*, *Ambrosino*, 2014 WL 3924609, at *2 (recovery of 47% of maximum damages was a fair compromise). This settlement also avoids expenditures of resources for all parties and the Court, and provides "significant benefit that [Plaintiffs] would not receive if the case proceeded—certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). This case has already been to the Ninth Circuit and to the steps of the United States Supreme Court. The next step was for Plaintiffs (some of whom have moved out of the state) to prove their claims at trial, without any certainty in the amount of a judgment or that

-8-

1    the judgment would be paid without further appeals. In one cautionary example, a wage and hour

2    case against U.S. Bank, filed in December 2001, resulted in a substantial verdict for the plaintiffs

3    in September 2008, which was reversed almost six years later by the California Supreme Court.

4    *See Duran v. U.S. Bank, NA*, 59 Cal. 4th 1, 14 (2014). This settlement is an excellent result for

5    the *McKeen-Chaplin* Plaintiffs after years of litigation.

6         The *Lynn's Foods* standard is meant to prevent a "waiver of statutory rights brought

7    about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. The existence of a

8    filed suit "provides some assurance of an adversarial context" underlying the settlement. *Id.*

9    Here, Provident litigated to the steps of the United States Supreme Court before agreeing to this

10   settlement. The litigation was certainly adversarial, and this settlement is not a give-away of

11   statutory rights resulting from employer overreach. The Court should find that the settlement is a

12   reasonable compromise of disputed FLSA claims.

13        **B. The Court Should Award the Requested Attorneys' Fees and Costs**

14        The resolution of this case "is a privately negotiated settlement." *Campanelli*, 2011 WL

15   3583597, at *1. Unlike a Rule 23 class, where class members are part of a certified class unless

16   they decide to opt-out, each Plaintiff affirmatively chose to join the litigation and to remain in

17   the case through full discovery and to the eve of trial. This case is also unlike large collective

18   actions, in that it only involves nine Plaintiffs, each of whom went through full discovery, was

19   prepared to prove their claims at trial, and individually signed the settlement agreement. That

20   settlement agreement disclosed each of their settlement amounts, as well as the amount of

21   attorneys' fees and costs Plaintiffs' Counsel would seek in this action.

22        Each of the Plaintiffs in this case also signed contingent fee legal services agreements

23   with Plaintiffs' counsel. (Helland Decl. ¶ 3.) Those legal services agreements expressly provide

24   for payment of attorneys' fees to counsel in the amount of one-third of any settlement.  (*Id.*).

25   Because Plaintiffs' Counsel took this case on a contingency basis, it has not received any

26   payment for the vast majority of its time litigating this case.[9] That litigation involved full

27

28   _____
     [9] Plaintiffs' Counsel received a small payment for attorneys' fees and costs when one Opt-in
     Plaintiff reached an individual settlement in. (Helland Decl. ¶ 3.)

-9-

discovery and two rounds of summary judgment briefing at the district court, a successful appeal to the Ninth Circuit, and a successful opposition to Provident's Petition for Writ of Certiorari to the United States Supreme Court. Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation, and saw this case through to successful resolution after years of litigation.

In FLSA-only settlements, it is appropriate to approve fees based on a contingency agreement. *See*, *e.g.*, *Ambrosino*, 2014 WL 3924609, at *2 (approving fees of one-third in FLSA settlement); *Scott v. Memory Co., LLC*, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) (settlement approved with attorneys' fees paid according to plaintiff's contingency agreement with his attorney); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (33.3% of the total settlement amount is appropriate in an FLSA action); *Faican v. Rapid Park Holding Corp.*, 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in an FLSA action). Given Plaintiffs' Counsel's persistent, and ultimately successful, litigation efforts in this case, the Court should find that the contingency arrangement is a reasonable payment of attorneys' fees, and approve the payment of $591,667.67 in total attorneys' fees from the settlement amount.[10]

Although Plaintiff's counsel believes it is not necessary to cross-check the fee request against Plaintiffs' Counsel's lodestar, a cross-check would confirm the reasonableness of the fee request. Plaintiffs' Counsel has incurred over $700,000 in fees in this case alone, and over $200,000 in fees in the *Neal* matter. (Helland Decl. ¶ 6.) These fees exceed the amount sought in the settlement, confirming that the fee request is reasonable.

Plaintiffs' counsel's private agreements with their clients provide for reimbursement of litigation costs in addition to payment of attorneys' fees. (Helland Decl. ¶ 3.) To date, Plaintiffs have incurred $54,000 in unreimbursed costs. (Helland Decl. ¶ 7.) Plaintiffs' Counsel will continue to incur costs in the administration of this settlement, including during the *Neal* notice

---

[10] Moreover, courts in this district routinely approve fees of ranging from thirty percent to one-third in wage and hour class settlements. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (collecting cases).

process. Plaintiffs will submit a final costs request in conjunction with its fee petition and final approval in *Neal*, and will report regarding the same when it requests dismissal of this action following final approval of *Neal*.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the settlement as Plaintiffs' FLSA claims, including the requested fees and costs. The Parties will file a status report in this case after the settlement receives final approval in *Neal* and will request dismissal of the case at that time.


DATED:  February 21, 2018                      NICHOLS KASTER, LLP


                                               By: s/ Matthew C. Helland
                                                    Matthew C. Helland

                                               Attorneys for Plaintiffs